UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GAY SANTARSIERO, LORI
MADDOX, LINDA SQUADRITO,
FRANCES FRANCIONE, ARDIS
BALIS, AND ANNE MARIE
PETRILLI,

        Plaintiffs,

v.                           Case No: 2:20-cv-00435-FtM-29NPM

JOHN MARTIN, LOU FRANCO,
ALEX CHEPURNEY, SHERYL
FRANCO, and SUSAN PERRIER,

        Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on review of defendants' Motion to Dismiss the Second Amended Complaint and Jury Demand (Doc. #45) filed on February 1, 2021, to which plaintiffs filed an Opposition to defendant's Motion (Doc. #49) on March 15, 2021. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

### I.

This case involves an ongoing dispute over access to and maintenance of common areas and amenities in the Edgewater Village (Edgewater) condominium complex in Punta Gorda, Florida, that has arisen between six *pro se* Florida plaintiffs and five Canadian defendants, all of whom are either part-time or full-time residents

at Edgewater. (Doc. #44, ¶¶ 2-3, 8-18.) On January 19, 2021, Plaintiffs filed a Second Amended Complaint (SAC) alleging fourteen causes of action against only five of the initial twelve defendants — John Martin, Lou Franco, Alex Chepurney, Susan Perrier, and Sheryl Franco (collectively Defendants). (Doc. #44.) The Complaint alleges the following claims: (1) breach of contract/failure by defendant John Martin to maintain common elements (areas); (2) breach of contract/failure by defendant L. Franco to maintain common elements (areas); (3) breach of contract/failure by defendant Alex Chepurney to maintain common elements (areas); (4) intentional infliction of emotional distress caused by defendant Franco against *pro se* plaintiff Ardis Balis; (5) intentional infliction of emotional distress caused by defendant Franco against *pro se* plaintiff Lori Maddox; (6) intentional infliction of emotional distress caused by defendant John Martin against *pro se* plaintiff Lori Maddox; (7) intentional infliction of emotional distress caused by defendant Franco against *pro se* plaintiff Frances Francione; (8) intentional infliction of emotional distress caused by defendant Franco against *pro se* plaintiff Anne Marie Petrilli; (9) intentional infliction of emotional distress caused by defendant Franco against *pro se* plaintiff Gay Santarsiero; (10) defamation of *pro se* plaintiff Ardis Balis' character by defendant Franco; (11) wrongful conversion of property by defendant Sheryl Franco; (12)

"Franco acting beyond board authority"; (13) voter fraud by defendants Franco, Martin and Perrier; (14) defendant Martin's failure to provide requested documents/destruction of material documents. (Id., pp. 4-48.)

## II.

Defendants urge the Court to dismiss the SAC in its entirety and raise numerous arguments as to why each claim in the SAC should be dismissed. (Doc. #45.) The Court addresses Defendants' arguments in turn below.

### A. Shotgun Pleading

Defendants move to dismiss each count because the SAC remains a shotgun pleading and otherwise does not comply with the pleading standard of Federal Rule of Civil Procedure 8(a). (Doc. #45.) Specifically, Defendants argue all fourteen counts of the SAC should be dismissed because Plaintiffs have improperly brought claims against multiple Defendants and brought multiple causes of action in each count. (Id., pp. 3, 5, 8, 10, 12, 15, 17, 20, 22, 25, 27-28, 30, 33, 36.) Upon review of the SAC, the Court agrees.

On July 8, 2020, Plaintiffs filed an Amended Complaint which asserted ten claims against some or all of the initial twelve named defendants for breach of contract, intentional infliction of emotional distress, harassment, defamation of character, wrongful conversion of property, board action beyond its authority, voter fraud, sexual harassment, failure to provide requested documents,

and negligence. (Doc. #5.) The Court dismissed Plaintiffs'
Amended Complaint for various reasons, one of which was because it
was a shotgun pleading. See Santarsiero v. Martin, No. 2:20-cv-
00435-FtM-29NPM, 2020 U.S. Dist. LEXIS 237961 (M.D. Fla. Dec. 18,
2020). In its Order, the Court explained that the Amended
Complaint was a shotgun pleading in two respects. First, it
adopted all the preceding paragraphs causing each successive count
to carry all that came before and the last count to be a combination
of the entire Amended Complaint in violation of Federal Rule 8(a).
Id., at *12, 14, 16, 18-19 n.8, 21, 23. Second, each count failed
to identify the specific facts and the particular nature of the
violations that each defendant allegedly committed, generally
lumping defendants together under each count. Id., at *8-9, 11-
12, 17.

In compliance with Eleventh Circuit case law, the Court gave
Plaintiffs the opportunity to file a second (and final) amended
complaint and to remedy such deficiencies, stating:

> The Court has serious questions concerning whether many
> of the counts in the Amended Complaint are capable of
> being adequately pled, whether the federal amount in
> controversy can be satisfied, and whether plaintiffs can
> assert their claims in a single complaint. The Court
> will allow plaintiffs one more opportunity to plead
> proper causes of action against proper defendants in
> accordance with the Federal Rules of Civil Procedure.
>
> For additional resources and assistance, plaintiffs may
> wish to consult the "Proceeding Without a Lawyer"
> resources on filing a pro se complaint that are provided
> on the Court's website, at http://www.flmd.uscourts.

gov/pro_se/default.htm. The website provides guidelines for filing (in light of the Coronavirus), answers to frequently-asked questions, a glossary of legal terms, and sample forms. There is also a link that, through a series of questions, may help plaintiffs generate an amended complaint. See https://www.flmd.uscourts. gov/forms/all/litigantswithoutlawyers-forms.

Finally, some general instructions for filing a complaint include: the amended complaint must (1) assert each claim in a separate numbered count, (2) clearly identify the specific defendant(s) against whom each claim is asserted, (3) clearly explain the factual allegations supporting each claim and their application to each defendant against whom the claim is asserted, (4) avoid vague, generalized, conclusory, contradictory or irrelevant assertions, and (5) avoid incorporating prior counts into those which follow.

<u>Santarsiero</u>, 2020 U.S. Dist. LEXIS 237961, at *23-24.

In the instant case, the SAC states in each and every count that "Pro se plaintiffs incorporate and restate each of the paragraphs 1 through 7 above as if fully set forth herein." (Doc. #44, ¶¶ 19, 37, 53, 69, 85, 99, 117, 135, 151, 163, 176, 183, 192, 200.) While most of the identified paragraphs set forth facts to support subject matter jurisdiction and proper venue, incorporation of Paragraph 5 is problematic because it brings additional causes of action by plaintiff Petrilli against additional Defendants, stating:

5. Pro se defendant [sic] Petrilli suffered damages derived from (i) her being wrongfully forced to sell one of her condo units by L. Franco, at a substantial loss, (ii) the breach by defendant L. Franco and Martin, of her implied contract with them and the failure by them to maintain and keep open the Edgewater Condominium Association, Inc. (EWV) common elements, including the pool, club house, rest rooms, tennis courts, and other

- 5 -

common amenities as required by the rules of the EWV Association, (iii) the failure by Martin to maintain flood insurance as required thereby reducing the value of her other Units by no less than 30% because all subsequent potential buyers are required to purchase in all cash transactions without the ability to obtain a mortgage and her consequent inability to sell her other units at fair market value as a result thereof, and (iv) the pattern of extremely abusive, over the top intentional harassing conduct and threats made by defendant L. Franco towards her, causing her extreme physical and emotional harm and distress.

(Id. at ¶ 5.)

The Eleventh Circuit has identified four types of categories of shotgun pleadings, one of which includes not separating into a different count each cause of action or claim for relief. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015). Here, Plaintiffs have at the very least alleged that plaintiff Petrilli is bringing causes of action for breach of an implied contract, harassment, and intentional infliction of emotional distress against defendants Lou Franco and/or John Martin, along with other causes of action stated in each count. Since Plaintiffs have failed to separate Petrilli's claims for relief into different counts, incorporation of Paragraph 5 in each cause of action of the SAC constitutes an impermissible shotgun pleading.

A district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss a complaint on shotgun pleading

grounds. _Weiland_, 792 F.3d at 1320. Nonetheless, the Court concludes that the proper remedy is less drastic in this case. The Court will strike paragraph 5, thereby eliminating consideration of those matters from Count I through Count XIV of the SAC.

**B. Failure to State a Claim**

Defendants further argue that each of the fourteen counts set forth in the SAC should be dismissed for failing to state a claim upon which relief may be granted. _See_ Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), an amended complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." _Id._ at 555. _See also Edwards v. Prime Inc._, 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take

them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**(1) Counts I, II, and III——Breach of Contract**

Counts One through Three of the SAC assert, on behalf of each Plaintiff, claims for breach of contract/failure to maintain the common elements (areas) against defendants John Martin, Lou Franco, and Alex Chepurney, respectively. (Doc. #44, pp. 4, 9, 14.) Inconsistently, the SAC alleges that "[i]t is the responsibility of the Condominium Association, [sic] to make sure that all the common areas (the common elements) . . . are all functioning and well-maintained," citing § 718.303, Fla. Stat, while also alleging that defendants Martin, Lou Franco, and

Chepurney individually have failed to maintain the premises and the common elements at Edgewater, and "deprived each of the pro se plaintiffs of their right to the use of the common elements, including the pool, laundry, club house, rest rooms, tennis courts and the other common elements," among other things. (Doc. #44, ¶¶ 21, 30-32, 38, 46-48, 54, 62-64.)

Defendants first argue that plaintiffs Ardis Balis and Francine Francione lack standing to bring this cause of action because neither Plaintiff owns or has owned a unit at Edgewater as an individual, and therefore is not a member of the Edgewater Village Condominium Association, Inc. (the Association).[1] (Doc. #45, pp. 2-3.) A litigant must have standing before he or she may bring a lawsuit in federal court.[2] See <u>Young Apartments, Inc. v. Town of Jupiter</u>, 529 F.3d 1027, 1038 (11th Cir. 2008). To establish standing, a plaintiff must show that: (1) plaintiff has suffered an actual or threatened injury; (2) plaintiff's injury is fairly

---

[1] In support of their argument that plaintiffs Balis and Francione lack standing, Defendants have attached to their Motion copies of the "Charlotte County Property Appraisers website and Warranty Deed of Trustee." (Docs. ##45-1, 45-2.) The Court, however, upon considering Defendants' motion, limits its review to that of the Second Amended Complaint. See <u>Christy v. Sheriff of Palm Beach Cty.</u>, 288 F. App'x 658, 664 (11th Cir. 2008) ("The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion.").

[2] Because this is a diversity action (Doc. #44, ¶¶ 1-4), 28 U.S.C. § 1332(a)(2), the Court applies Florida substantive law and federal procedural law. <u>Georgia Dep't of Admin. Servs. v. Zhang</u>, 819 F. App'x 684, 687 (11th Cir. 2020).

traceable to the challenged conduct of the defendant; and (3) plaintiff's injury is likely to be redressed by a favorable ruling. <u>Bank of Am. Corp. v. Kachkar (In re Kachkar)</u>, 769 F. App'x 673, 680 (11th Cir. 2019).

Here, The SAC alleges that plaintiffs Balis and Francione are both owners of an Edgewater condominium unit (Doc. #44, ¶¶ 9, 12), and that as unit owners they have suffered physical, emotional, and financial damages from being denied the use and enjoyment of Edgewater's common areas. (<u>Id.</u> at ¶¶ 33-34.) While Defendants may dispute these allegations, the Court must accept them as true at this stage of the proceedings and finds them sufficient to allege that plaintiffs Balis and Francione have ownership in Edgewater condominium units for standing purposes. <u>See</u> <u>Erickson</u>, 551 U.S. at 89; <u>see also</u> <u>Rogers & Ford Constr. Corp. v. Carlandia Corp.</u>, 626 So. 2d 1350, 1353 (Fla. 1993) (individual unit owners have standing to maintain actions arising over disputes about the common elements). For the same reasons, the Court rejects Defendants' argument that plaintiffs Balis and Francione lack standing to bring causes of action set forth in Counts Two through Three, as well as Counts Eleven through Thirteen of the SAC.

Next, Defendants argue that Plaintiffs have failed to state a plausible breach of contract claim against defendants Martin, Lou Franco, and Chepurney because there is no allegation of the

existence of a valid contract between these named Defendants and Plaintiffs.  (Doc. #45, ¶¶ 12, 26, 40.)  The SAC alleges that

> 28. Upon purchase of each pro se plaintiffs' Unit, there is an implied contract with the board and Association that the President of the board, in this case Martin [and Directors Franco and Chepurney] would insure the proper upkeep and maintenance of the facility. This stems from the fact the Bylaws, Declaration and Articles specify the duties of the board and hence its directors and officers to carry out those duties.  Each pro se plaintiff was provided with the Association's Bylaws and Declarations prior to purchase of her respective unit wherein these obligations of the Association acting through its officers and directors are set forth.  These obligations include maintaining the complex.

(Doc. #44, ¶¶ 28, 43, 59.) Plaintiffs argue that because they have made financial payments to the Association for maintenance of the Edgewater premises, and that the Association through its officers and directors is supposed to maintain the premises of the complex, defendants Martin, Franco and Chepurney are being unjustly enriched due to taking Association dues from the unit owners and failing to care and maintain the premises.  (Doc. #49, pp. 9-14, 16-18.)

"In Florida, a claim for unjust enrichment is an equitable claim based on a legal fiction which implies a contract as a matter of law even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them." 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc., 43 So. 3d 877, 880 (Fla. 1st DCA 2010) (citing Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th. Cir. 1999)); see KENF,

L.L.C. v. Jabez Rests., Inc., 303 So. 3d 229, 231 (Fla. 2d DCA 2019)("Essentially, the doctrine operates to imply a contract where none otherwise exists so as to ensure equity between the parties."). Such a contract implied in law, also known as a quasi contract, is established "where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." Id.

Here, the SAC does not provide sufficient allegations to show that defendants Martin, Lou Franco, or Chepurney have received a benefit without paying any compensation. Rather, the allegations contained within the four corners of the SAC state that Plaintiffs have paid monthly fees to the Edgewater Association, and are entitled to "unfettered access to healthy and well-maintained common elements pursuant to the law, and the implied contract . . .."[3] (Doc. #44, ¶¶ 35, 51, 67.) Accordingly, the Court finds that the SAC does not sufficiently allege a claim for breach of an implied contract, or unjust enrichment against the named Defendants. Defendants' motion to dismiss Counts One through Three of the SAC is therefore granted.

---

[3] In addition, there are no allegations within the SAC that identify the existence of a valid contract between the Plaintiffs and the named Defendants to demonstrate that a breach of contract occurred. See Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer, 265 So. 3d 715, 719 (Fla. 2d DCA 2019)("The elements of a breach of contract cause of action are: (1) a valid contract, (2) a material breach, and (3) damages.").

**(2) Counts IV, V, VII, VIII, and IX——Intentional Infliction of Emotional Distress**

Counts Four and Five, as well as Counts Seven through Nine allege that defendant Franco [4] has intentionally inflicted emotional distress upon plaintiffs Balis, Maddox, Francione, Petrilli, and Santarsiero, respectively. (Doc. #44, pp. 19, 22, 28, 32, 35.) In order to state a cause of action for intentional infliction of emotional distress (IIED) in Florida, Plaintiffs must allege and ultimately prove "(1) intentional or reckless conduct (2) that is outrageous in that it is beyond all bounds of decency and utterly intolerable in a civilized community (3) and that causes the victim emotional distress (4) that is severe." Hammer v. Sorensen, 824 F. App'x 689, 694 (11th Cir. 2020) (quoting Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018)(citations and quotation marks omitted)). "[S]evere emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." Brown v. Bellinger, 843

---

[4] Counts Four and Five, along with Counts Seven through Nine of the SAC, do not reference whether defendant Lou Franco or Sheryl Franco is the intended defendant. See (Doc. #44, ¶¶ 69-84.) See Pierson v. Orlando Reg'l Healthcare Sys., 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009)("Although [Rule 8] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'").

F. App'x 183, 188 (11th Cir. 2021) (quoting <u>Kim</u>, 249 So. 3d at 1305). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." <u>Escadote I Corp. v. Ocean Three Condo. Ass'n, Inc.</u>, 45 Fla. L. Weekly D2267 (Fla. 3d DCA Oct. 7, 2020), (quoting <u>Liberty Mut. Ins. Co. v. Steadman</u>, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)).

The SAC alleges causes of action for IIED based on the following:

> 70. Defendant Franco engaged in extreme and outrageous conduct, which went beyond all possible bounds of decency.
>
> 71. Defendant Franco's intent was to cause severe emotional distress and recklessly disregard the probability of causing pro se plaintiff Balis [and Maddox, Francione, Petrilli, and Santarsiero] extreme and severe emotional distress.
>
> 72. The emotional distress suffered by the pro se plaintiff Balis [and Maddox, Francione, and Santarsiero] was as a direct result of abusive, intimidating and outrageous conduct, actions, and verbal assaults committed by defendant Franco against pro se plaintiff Balis [and Maddox, Francione, Petrilli, and Santarsiero].

(Doc. #44, ¶¶ 70-72, 86-88, 118-20, 136-38, 152-54.)

Based on the allegations above, Defendants argue all Counts alleging a claim for IIED against defendant Franco should be dismissed because the Plaintiffs merely plead labels and conclusions. (Doc. #45, pp. 12, 14, 19, 22, 24-25.) The Court agrees, and finds that such allegations cannot survive a motion to

dismiss because a formulaic recitation of the elements of an IIED cause of action will not do.  See Twombly, 550 U.S. at 555.

In addition, Defendants contend the SAC fails to plead any "factual allegations which arises to the level of outrageous, odious and utterly intolerable in a civilized society." (Doc. #45, pp. 12, 14, 19, 22, 24-25.)  Plaintiff Balis alleges that defendant Franco's extreme and outrageous conduct consisted of yelling, throwing papers, ordering flowers and bushes that Balis planted to be cut down, and calling local authorities on plaintiff Balis, which caused Balis to suffer from insomnia, severe nightmares, an inability to concentrate, and be angry, anxious, and withdrawn. (Doc. #44, ¶¶ 78, 80-81.) These allegations are not sufficient.

"The standard for 'outrageous conduct' is particularly high in Florida." Clemente v. Horne, 707 So. 2d 865, 867 (Fla. 3d DCA 1998)(holding that being constructively evicted from one's residence with no suitable housing alternative was not "extreme or outrageous" conduct); see also Lay v. Roux Laboratories, 379 So. 2d 451 (Fla. 1st DCA 1980) (threatening plaintiff with job, using humiliating language, vicious verbal attacks and racial epithets deemed insufficient to serve as predicate for claim of intentional infliction of emotional distress). "Liability . . . does not extend to mere insults, indignities, threats, or false accusations" Williams v. Worldwide Flight Servs., 877 So. 2d 869, 870 (Fla. 3rd DCA 2004), such as those alleged to have been made by defendant

Franco.  Further, cutting down flowers and bushes do not rise to the level of outrageous conduct, or exceed all bounds usually tolerated by a decent society, but amount to no more than "rough and tumble of everyday life."  Deleo v. Reed, CV 990172435, 2000 Conn. Super. LEXIS 58, at *6 (Super. Ct. Jan. 3, 2000) (finding plaintiff failed to state a claim for intentional infliction of emotional distress because defendant's cutting down of trees is not outrageous conduct.) The Court finds as a matter of law that plaintiff Balis' allegations do not state a plausible IIED claim because she failed to allege defendant Franco engaged in outrageous conduct.

With respect to plaintiff Maddox, the SAC alleges defendant Franco was "bullying" plaintiff Maddox, harassing her when she walked her dog, shouting verbal assaults like "fat, ugly, and disgusting", and inappropriately touching his genitals while at the pool area. (Id. at ¶¶ 94-95.) While defendant Franco's actions may be offensive, it is well settled under Florida law that allegations of bullying, harassment, or verbal assaults are insufficient to state an IIED claim.  See Saadi v. Maroun, No. 8:07—cv—1976—T—24—MAP, 2008 U.S. Dist. LEXIS 116658, 2008 WL 4194824, at *5 (M.D. Fla. Sept. 9, 2008) (allegations of "bullying, intimidation, and menacing" and making "written and verbal threats of physical violence" against plaintiff and his elderly father were considered a "vague reference to verbal threats" and

insufficient to allow IIED claim to go forward). Accordingly, as a matter of law plaintiff Maddox's allegations do not rise to the level of outrageous conduct sufficient to survive Defendants' Motion to Dismiss.

Likewise, the Court finds plaintiffs Francione, Petrilli, and Santarsiero's allegations fail to state a plausible IIED cause of action. The SAC alleges that defendant Franco was extremely abusive towards plaintiff Francione, to the extent she had to resign from the Association's board, and Franco yelled and screamed at her so violently that Francione's blood pressure and anxiety increased. (Id. at ¶ 125.) Plaintiff Petrilli alleges that Franco verbally harassed and intimidated her to the extent she sold one of her Edgewater condominium units. (Id. at ¶ 143.) Finally, with regard to plaintiff Santarsiero, the SAC alleges that as a result of defendant Franco's email[5] stating that Plaintiffs made a terrible mistake filing a lawsuit against him, and stating that pro se Plaintiffs have to "feel the pain," Santarsiero fears for

---

[5] The email from defendant Franco allegedly stated that

" . . . you all made a terrible mistake filing a lawsuit against me . . . First, I intend to expose your true self to either your landlord, employer, priest, Charlotte County, and all owners in our complex, and the second will come at the appropriate time. This lawsuit has awakened the beast . . . in the Canadians."

(Doc. #44, ¶ 155.)

her safety, is anxious, has insomnia, changed the locks to her condominium unit and decided to move. (Id. at ¶¶ 155, 157-59.)

"To qualify as 'extreme and outrageous,' defendant's conduct must have 'been so outrageous in character, and so extreme in degree, . . . to be regarded as atrocious, and utterly intolerable in a civilized community.'" Pierre v. City of Miramar, 537 F. App'x 821, 827 (11th Cir. 2013) (quoting Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985)). As discussed above, written and verbal threats, insults and even vague allegations of harassment are not typically characterized as outrageous conduct. See Saadi, 2008 WL 4194824, at *5; see also Williams, 877 So. 2d at 870. Even though the SAC alleges that plaintiffs have experienced a wide range of responses such as crying, night sweats, insomnia, or anxiousness due to defendant Franco's alleged behavior (Doc. #44, ¶¶ 92-93, 124-25, 142-44, 158-59), a plaintiff's "subjective response" to the conduct "does not control the question of whether the tort of intentional infliction of emotional distress occurred." Deauville Hotel Mgmt., LLC v. Ward, 219 So. 3d 949, 955 (Fla. 3d DCA 2017). The emotional distress alleged by each plaintiff is not such that "no reasonable person in a civilized society should be expected to endure it." See Brown, 843 F. App'x at 188.

Accordingly, Defendants' motion to dismiss Counts Four and Five and Counts Seven through Nine is granted as Plaintiffs have failed to state IIED claims upon which relief may be granted.

**(3)  Count VI——Intentional Infliction of Emotional Distress**

Defendants continue to argue that Count Six should be dismissed because it fails to plead any factual allegations which arises to the level of "outrageous, odious and utterly intolerable in a civilized society."  (Doc. #45, pp. 16-17.)  Count Six of the SAC asserts an IIED claim against defendant John Martin on behalf of plaintiff Lori Maddox. (Doc. #44, p. 25.)

Plaintiffs allege that Martin engaged in extreme and outrageous conduct, which went beyond all possible bounds of decency with the intent to cause plaintiff Maddox severe distress.[6] (Id. at ¶¶ 100-01.) Specifically, the SAC alleges that Martin barged into Maddox's apartment to tell her to "back off" and screaming at her, and broke into her apartment while she was on Zoom meetings. (Id. at ¶¶ 110-12.)  The SAC further alleges that plaintiff Maddox fears for her safety and cannot sleep through the

---

[6] While Count Six appears to be a claim brought against defendant Martin, it also alleges that the emotional distress suffered by plaintiff Maddox was a direct result of abusive, intimidating and outrageous conduct committed by defendant "Franco."  (Doc. #44, ¶ 102.)  It is not clear to the Court whether this is a typographical error or if Plaintiffs intend to bring an IIED claim against Mr. or Mrs. Franco on behalf of plaintiff Maddox.

night, along with feeling anxious due to defendant Martin's actions. (Id. at ¶ 112.)

Although the anxiety and stress associated with someone barging into your apartment and screaming is certainly understandable, it does not give rise to an IIED claim. "[S]ome degree of emotional disturbance, even significant disturbance, is part of the price of living in a complex and interactive society." Kim, 249 So. 3d at 1306. "Insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not fall into the category of outrageous conduct. Blumenthal v. Smith, No. 6:17-cv-975-Orl-40TBS, 2018 U.S. Dist. LEXIS 221164, at *6 (M.D. Fla. Feb. 26, 2018) (quoting Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. 4th DCA 1987)). Even intentional, malicious, and criminal conduct are not sufficiently outrageous under Florida law. See State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So.2d 1210, 1213 (5th DCA 1995)(holding "it is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort."). For these reasons, Count Six is dismissed for failing to state a claim for IIED.

**(4)   Count X——Defamation of Character**

In Count Ten of the SAC, Plaintiffs assert an action for defamation of character against defendant "Franco."[7] (Doc. #44, p. 38.) Defendants argue on various grounds that Plaintiffs have not alleged a plausible defamation claim, one of which is because Plaintiffs merely plead conclusions and fail to plead with specificity any factual allegation for which relief may be granted. (Doc. #45, p. 26.)

Under Florida law, "[a] claim of defamation requires 'the following five elements: (1) publication [to a third party]; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.'" Kieffer v. Atheists of Fla., Inc., 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (citations omitted.) Plaintiffs allege that defendant Franco "knowingly and negligently . . . falsely stated [] in front of no less than 90-unit owners at the Edgewater Village board of director's meeting in November, 2019, [] that pro se plaintiff

---

[7] The SAC does not indicate whether the defamation claim relates to defendant Lou or Sheryl Franco. (Doc. #44, ¶¶ 163-75); see Pierson, 619 F. Supp. 2d at 1273 ("Although [Rule 8] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'").

Balis was a 'liar.'" (Doc. #44, ¶ 164.)  Plaintiffs further allege
that Franco was "aware that he was intentionally spreading a
falsehood to discredit" Balis in front of fellow unit owners, which
caused serious and permanent harm to Balis' reputation. (Id. at ¶¶
165, 170.)

Although "[a] false statement of fact is the *sine qua non* for
recovery in a defamation action," Byrd v. Hustler Magazine, Inc.,
433 So. 2d 593, 595 (Fla. 4th DCA 1983), the Court finds the SAC
does not sufficiently plead facts giving rise to a defamation claim
because it alleges in a conclusory fashion that Franco knew or
negligently made a "falsehood."  Allegations such as these amount
to little more than "threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements," which are
insufficient to support a cause of action.  Iqbal, 556 U.S. at
678; see Corsi v. Newsmax Media, Inc., No. 20-CV-81396-RAR, 2021
U.S. Dist. LEXIS 28315, at *17 (S.D. Fla. Feb. 12, 2021)(finding
an allegation that Defendants "knew that the statements made . .
. were false, or at a minimum, acted with recklessness as to their
truthfulness," to be inadequate to survive a motion to dismiss).

Additionally, Defendants argue that Franco's alleged
statement is protected from a defamation cause of action because
"true statements that are not readily capable of being proven
false, and statements of pure opinion are protected. (Doc. #45,
pp. 26-27.) Florida courts recognize a distinction between a pure

expression of opinion, which is not actionable, and a mixed expression of opinion. Sullivan v. Barrett, 510 So. 2d 982, 983-84 (Fla. 4th DCA 1987); see also From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 56 (Fla. 1st DCA 1981). Pure opinion occurs when a defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. Hoch v. Rissman, Weisberg, Barrett, 742 So. 2d 451, 459 (Fla. 5th DCA 1999). "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication." Id. at 459-60 (citing From, 400 So. 2d at 57).

Whether a statement is one of fact or opinion is a question of law for the court and not a jury. Skupin v. Hemisphere Media Grp., Inc., 45 Fla. L. Weekly D2393 (Fla. 3d DCA Oct. 21, 2020). "When the court makes these determinations, it 'must construe the statement in its totality, examining not merely a particular phrase or sentence, but all the words used in the publication.'" Id. Based on the allegations in the SAC, the Court is unable to reach a determination as to whether defendant Franco's statement that Balis was a "liar" is pure opinion. The SAC states that prior to Franco calling Balis a liar, Balis had explained to Franco and the Board that they were not following proper election procedures.

(Doc. #44, ¶ 166.) However, the SAC and attached exhibits do not make it clear whether Franco's statement was related to election issues, and whether such issues were known to the unit owners who attended the meeting.

Finally, Defendants contend that Count Ten should be dismissed under Rule 12(b)(6) because Balis has not alleged she suffered actual damages. (Doc. #45, p. 27.) In Florida, when a plaintiff claims a published statement has injured his or her reputation (i.e., brought a defamation per quod claim), <u>Pope v. Big Bend Cares, Inc.</u>, No. 4:13cv611-RH/CAS, 2014 U.S. Dist. LEXIS 186474, at *4-5 (N.D. Fla. Dec. 18, 2014), the plaintiff must allege and prove actual damages to recover. <u>Id.</u> at *4.

Here, the SAC alleges that plaintiff Balis' reputation was "seriously and permanently harmed" by Franco's statement and that Balis was "emotionally depressed as her knees buckled and her hands shook," and she became physically ill.[8] (<u>Id.</u> at ¶¶ 170, 172-73.) Even though "it is often difficult for a plaintiff to prove actual damages," <u>Klayman v. Judicial Watch, Inc.</u>, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014), "evidence of some actual injury, such as injury to reputation, personal humiliation, and mental anguish and suffering, is required for a plaintiff to recover for defamation." Id. (quoting <u>Miami Herald Publ'g Co. v. Ane</u>, 458 So. 2d 239, 242,

---

[8] Plaintiff Balis seeks compensatory damages "in the amount of $25,000 and $125,000 for pain and suffering. (Doc. #44, p. 51.)

243 n.3 (Fla. 1984) (internal quotations omitted)); see Evollution IP Holdings, Inc., 975 F. Supp. 2d 1247, 1259 (S.D. Fla. 2013) (the tort of defamation, recognizes that "a man's reputation [is] possibly his most valuable asset, [and] that vindicating that reputation in the face of one who sought to defame it [is] of paramount importance . . . ."). Liberally construing the SAC and viewing the allegations in a light most favorable to Plaintiffs, the Court finds the allegation that plaintiff Balis reputation was seriously and permanently harmed is sufficient to support actual damages. Nevertheless, for the reasons discussed above, the Court grants Defendants' motion to dismiss Count Ten pursuant to Rule 12(b)(6).

### (5) Count XI—Wrongful Conversion of Property

Plaintiffs allege a wrongful conversion of property claim against Sheryl Franco in Count Eleven of the SAC. (Doc. #44, p. 27.) Under Florida law, "conversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." Harvey v. United States, No. 15-CV-24012-ALTONAGA, 2020 U.S. Dist. LEXIS 75356, at *45-46 (S.D. Fla. Apr. 28, 2020) (quoting Spradley v. Spradley, 213 So.3d 1042, 1044 (Fla. 2d DCA 2017) (internal citations and quotations omitted)); see also Warshall v. Price, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) ("Conversion is an act of dominion wrongfully asserted over

another's property inconsistent with his ownership therein." (internal quotation marks omitted)). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." Edwards v. Landsman, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

Defendants argue that Plaintiffs conversion claim must be dismissed because Plaintiffs merely plead conclusions and fail to plead with specificity any facts upon which relief may be granted. (Doc. #45, ¶ 148.) The Court does not agree.

The SAC alleges in Count Eleven that plaintiffs Maddox, Squadrito, Francione, and Petrilli participated in a weekly event held by defendant Sheryl Franco, during which they contributed funds to a game and the proceeds were used to purchase furnishings for Edgewater's common areas. (Doc. #44, ¶ 177.) Plaintiffs assert that Sheryl Franco, through defendant John Martin, claimed that the furnishings were her property and would not be available to Plaintiffs. (Id. at ¶ 178.) Plaintiffs allege that Sheryl Franco, in collusion with defendants John Martin, Lou Franco, and Alex Chepurney, ordered "handiman [sic] Jim Ardolino to lock it all up."[9] (Id. at ¶ 179.)

_____

[9] It is not entirely clear whether Plaintiffs are asserting a conversion claim against only defendant Sherly Franco, or against defendants Martin, Lou Franco, Chepurney as well. The Court will read this count as attempting to state a claim solely against

A condominium owner has a right to use common elements, including Association-owned property placed in common areas. Fla. Stat §§ 718.102(3), and 718.106(3). Thus, the Court finds Count Eleven states a plausible claim of conversion against defendant Sheryl Franco. Defendants' motion to dismiss Count XI is denied.

### (6) Count XII——Board Action Beyond Its Authority

Count Twelve of the SAC alleges that defendant Franco[10] has acted beyond board authority by "wrongfully terminat[ing] [Edgewater's] flood insurance and refus[ing] to have it reinstated, causing substantial reduction in the value of pro se plaintiffs' units and exposing them to uncovered flood damage." (Doc. #44, ¶ 185.) The SAC also alleges that defendants "Franco and Martin" have refused to reinstate the flood insurance (Id. at ¶ 187), and Plaintiffs request that the Court issue an order directing both defendants to secure Edgewater's flood insurance. (Id. at ¶ 191.)

_____

Sheryl Franco.

[10] As with other counts in the SAC, Count Twelve does not reference whether defendant Lou Franco or Sheryl Franco is the intended defendant. See (Doc. #44, ¶¶ 183-91.) See Pierson v. Orlando Reg'l Healthcare Sys., 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009)("Although [Rule 8] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'").

Defendants assert Count Twelve should be dismissed because Plaintiffs were required to engage in mandatory non-binding arbitration and mediation pursuant to Florida Statute § 718.1255(4)(a) as a condition precedent to commencing litigation. (Doc. #45, ¶ 157.) However, the Court previously addressed this very issue, stating that

> Section 718.1255(1)(a)-(c) identifies only certain "disputes" that are subject to non-binding arbitration, none of which are identified by defendants as a basis for arbitrating this cause of action. The Court finds that a dispute about whether defendants wrongfully terminated flood insurance is not a covered dispute under Section 718.1255.

Santarsiero, 2020 U.S. Dist. LEXIS 237961, at *18 n.7. Therefore, the Court finds Defendants' argument to be unpersuasive as the dispute over flood insurance in this case is not subject to § 718.1255(4)(a).

Additionally, Defendants argue that dismissal is warranted because Plaintiffs have failed to provide any foundation on which defendant Franco has a duty to ensure Edgewater has the requisite flood insurance. (Doc. #45, ¶ 162.) The SAC alleges the following:

**184.** EWV is in a designated Zone A Flood Area, whereby EWV is required to have flood insurance in order to be reimbursed for flood damages, and for potential buyers of units to obtain mortgages.

**185.** Defendant Franco *acting without the authority and approval of the board and the Association*, on his own, and against the advice of the Association's attorney, wrongfully terminated flood insurance and refuses to have it reinstated, causing substantial reduction in the

value of pro se plaintiffs' units and exposing them to uncovered flood damage.

**186.** In addition, terminating the flood insurance has reduced the value of each pro se plaintiffs' unit by at least 30%.

**187.** The pro se plaintiffs have on numerous occasions requested that defendant Franco and defendant Martin cause the reinstatement of the flood insurance, which they have refused to do.

(Doc. #44, ¶¶ 184-87.)

Taking the allegations as true and viewing them in a light most favorable to Plaintiffs, the SAC fails to state a claim to relief that is plausible on its face. <u>Twombly</u>, 550 U.S. at 570. Absent from Count Twelve's allegations are any facts demonstrating that defendant Franco (or Martin) had an obligation or duty to ensure flood insurance was maintained to demonstrate that the duty was breached. Based on the foregoing, Count Twelve does not state a viable cause of action and is therefore dismissed under Rule 12(b)(6).

### (7) Count XIII——Voter Fraud

Count Thirteen of the SAC asserts a claim of voter fraud by defendants Franco, Martin and Perrier. (Doc. #44, p. 44.) The SAC states that "[u]pon information and belief, defendant Franco and Martin failed to follow Florida law regarding counting ballots for the election of directors[,]" in violation of Florida Condominium Law Chapter 78, which requires envelopes "to be distinctive and recognizable containing a sealed ballot so that it is not

inadvertently opened before the election." (Id. at ¶ 194.)
Plaintiffs allege that defendants Perrier, Franco, Martin and
Chepurney "together engineered the 'fixing' of the election in
favor of Martin, Franco and [sic] Chepurney" by opening envelopes
prior to an election and substituting valid ballots with false
ones. (Id. at ¶¶ 195-96.)

Defendants raise multiple reasons as to why this claim should
be dismissed, one of which is that under § 718.1255 Plaintiffs are
required to engage in non-binding arbitration prior to bringing
this action before the Court. (Doc. #45, ¶ 170.) Indeed, the
Court previously addressed this very issue and dismissed
Plaintiffs' claim for voter fraud in the Amended Complaint, stating

> Disputes between two or more parties that
> involve the failure of the governing body to
> "properly conduct elections" require a
> petition filed with the Division of Florida
> Land Sales, Condominiums, and Mobile Homes of
> the Department of Business and Professional
> Regulation ("the Division") for mandatory non-
> binding arbitration. Fla. Stat. §§
> 718.1255(1)(b)(1), (4)(a); Abraham v. Sandy
> Cove 3 Ass'n, No. 8:09-cv-107-T-30EAJ, 2009
> U.S. Dist. LEXIS 51498, *3-4, (M.D. Fla. June
> 4, 2009). Plaintiffs have not alleged that
> they petitioned the Division prior to
> commencing this litigation. The petition for
> non-binding arbitration is a condition
> precedent to filing a lawsuit for this claim,
> and as such, dismissal of Count VII is proper.
> Neate v. Cypress Club Condo., 718 So.2d 390,
> 393 (Fla. 4th DCA 1998)(holding that "[t]he
> violation of a condition precedent to filing
> an action in court should properly be a
> dismissal, not a stay[,]" pending

> arbitration."). Accordingly, Count VII is
> dismissed without prejudice

Santarsiero, 2020 U.S. Dist. LEXIS 237961, at *19.

Here, Plaintiffs allege that they have filed a petition with the Division for resolution of their voting fraud claims, and that the Division has "assumed" the matter.[11] (Doc. #44, ¶ 193.) Plaintiffs nevertheless seek an order from the Court for defendants Shery and Lou Franco, Chepurney and Martin's immediate removal from the Association's Board of Directors, as well as $250,000 in punitive damages.[12] The purpose of Section 718.1255 is to offer "a more efficient, cost-effective option to court litigation" between condominium associations and unit owners. Aquarius Condo. Ass'n v. Goldberg, 312 So. 3d 86, 87 (Fla. 4th DCA 2021)(quoting § 718.1255(3)(b), Fla. Stat.). While not all requests for relief are subject to administrative review, Cornerstone 417, Ltd. Liab. Co. v. Cornerstone Condo. Ass'n, 300 So. 3d 1262, 1266 (Fla. 5th

---

[11] Attached to Plaintiffs' SAC is an exhibit containing three letters from the Division pertaining to the Edgewater Village Condominium Association for Case Nos. 2020056046, 2020056035, and 2020056031. (Doc. #44-3, pp. 2-4.) The individual letters indicate that the Division is investigating each case, that a letter was sent to the Edgewater Association, a response from the Association was received, and that updates will be provided every 30 days until the matter is resolved. The Division letters, however, do not indicate the specific matters being investigated.

[12] Plaintiffs provide no legal theory or statutory basis to support their demand for the named defendants to be removed from the Board of Directors or for punitive damages allegedly resulting from voter fraud. See (Doc. #44, pp. 44-46.)

DCA 2020)(acknowledging there are claims that fall outside the scope of section 718.1255), to allow Plaintiffs to bring its voter fraud claim and avoid mandatory nonbinding arbitration would render section 718.1255 meaningless. See § 718.1255(4)(k). As it stands, this matter is not ripe for adjudication since the investigation by the Division has yet to be resolved.

Defendants also assert that Plaintiffs have failed to challenge the election process within the proscribed time set forth in § 718.112(2)(d)(4)(c), thus Plaintiffs have waived any right to claim voter fraud. (Doc. #45, p. 34.) Section 718.112(2)(d)(4)(c) states that "[a]ny challenge to the election process must be commenced within 60 days after the election results are announced." Plaintiff Balis avers that the contested election took place on November 15, 2019. (Doc. #44-2.) According to the controlling statute, however, Plaintiffs would have to assert their challenge on or before January 14, 2020. The initial complaint in this matter was not filed until June 19, 2020. (Doc. #1.) The Court therefore finds that Plaintiffs challenge to the November 2019 election process is untimely and warrants dismissal on this ground as well. For the reasons set forth above, Defendants Motion is granted and Count Thirteen of the SAC is dismissed.

**(8) Count XIV——Failure To Provide Requested Documents/Destruction of Material Documents**

Count Fourteen of the SAC alleges that each *pro se* Plaintiff has requested in writing that defendant Martin make available "certain financial and other association documents required to be made available to unit owners pursuant to Florida Condominium Law," but defendant Martin refused to do so and claimed that many of the documents were destroyed. (Doc. #44, ¶¶ 204-05.)

Just as with Plaintiffs' claim for voter fraud, the Court previously dismissed this cause of action because Plaintiffs had not complied with section 718.1255, which states that parties to disputes regarding the failure of a governing body of a condominium association to allow inspection of its books and records are required to petition the Division of Florida Land Sales, Condominiums, and Mobile Homes of the Department of Business and Professional Regulation for mandatory non-binding arbitration. Fla. Stat. §§ 718.1255(b)(4), (4)(a); see Santarsiero, 2020 U.S. Dist. LEXIS 237961, at *21.

Here, the SAC alleges that Plaintiffs have filed a petition with the Division seeking resolution of inspecting certain records and documents relating to the Association, and that the Division has "assumed" the matter. (Doc. #44, ¶¶ 201-02; Doc. #44-3, pp. 2-4.) Plaintiffs, however, request that the Court require defendant Martin to produce the at-issue documents. (Id. at ¶ 210.)

For similar reasons discussed above, for the Court to comply with Plaintiffs' request would defeat the purpose of § 718.1255, and thus dismissal of Count Fourteen is proper.

Alternatively, the Court finds dismissal of Count Fourteen is warranted because it incorrectly incorporates an additional cause of action for wrongful conversion of property. The SAC appears to allege that defendant Martin and Franco have wrongfully converted a portion of Association funds in the amount of $250,000 and $1,800,000, which remain unaccounted for. By so alleging, Plaintiffs have failed to separate each cause of action into a separate count, which makes this a shotgun pleading. See <u>McDowell v. Gonzalez</u>, 820 F. App'x 989, 990 (11th Cir. 2020)(acknowledging that a complaint is a shotgun pleading when it fails to separate each cause of action or claim for relief into separate counts). Defendants' motion is granted and Count Fourteen is dismissed.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. #45) is **GRANTED IN PART AND DENIED IN PART.**

2. Count I through Count X and Count XII through Count XIV of the Second Amended Complaint (Doc. #44) are **DISMISSED** with prejudice.

3. The sole remaining claim is Count XI. Plaintiffs shall show cause within fourteen (14) days why the $75,000 jurisdictional amount is satisfied as to this count.

**DONE** and **ORDERED** at Fort Myers, Florida, this ___8th___ day of July, 2021.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE



Copies:
Parties of Record